IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:21–CR–250 |
| vs. | MEMORANDUM AND ORDER ON MOTION TO VACATE UNDER 28 U.S.C. 2255 |
| TERRANCE SHERMAN, | |
| Defendant. | |

Defendant Terrance Sherman filed a *pro se* Motion to Vacate under 28 U.S.C. § 2255. Filing 138. This matter is before the Court to conduct an initial review pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings and 28 U.S.C. § 2255(b). For the reasons stated herein, the Court finds it "plainly appears" that Sherman is not entitled to relief and will deny his Motion. *See* 28 U.S.C. § 2255, Rule 4(b). The Court will not issue a certificate of appealability.

## I.  BACKGROUND

Pursuant to a Rule 11(c)(1)(C) plea agreement, Sherman pleaded guilty to two counts alleged in a Superseding Indictment. Filing 77; Filing 106 at 1. The first offense alleged in Count I charged Sherman with conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine (actual), in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). Filing 77 at 1. The second offense alleged in Count III charged Sherman with carrying or using a firearm during and in relation to federal drug trafficking crimes, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (2). Filing 77 at 2. In his Petition to Enter a Plea of Guilty, Sherman acknowledged that he was in fact guilty and wrote "see plea agreement" when asked to elaborate on why he believed he was guilty. Filing 105 at 7. The factual basis set forth in the plea agreement states as follows:

1

> On August 20, 2021, during the early morning, officers conducted a vehicle stop in Macy, Nebraska. Four people were in the vehicle including Collin Parker ("Parker") and defendant Terence Sherman ("Sherman"). Inside the vehicle, officers located methamphetamine, scales, and baggies. Parker and Sherman were knowingly in possession of the methamphetamine, scales, and baggies. The methamphetamine was later tested and confirmed to be approximately 123.18 grams of methamphetamine with a purity of at least approximately 94%. Officers also located in the vehicle a Mossberg 500, .12-gauge shotgun, with serial number V00033 1 3 ("Firearm l"). Parker and Sherman were knowingly in possession of Firearm 1. Parker and Sherman had joined an agreement to distribute and possess with the intent to distribute methamphetamine. Parker and Sherman possessed Firearm 1 in furtherance of their conspiracy to distribute and possess with the intent to distribute methamphetamine. Parker and Sherman possessed Firearm 1 in furtherance of their possession of the methamphetamine with the intent to distribute.

Filing 106 at 2–3.

In exchange for his guilty pleas to Counts I and III, the Government agreed to dismiss the remaining three counts alleged against him in the Superseding Indictment. Filing 77 at 1–4; Filing 106 at 1. The parties' agreement also provided that the Defendant would be sentenced to an aggregate term of 180 months imprisonment. Filing 106 at 4. At the Defendant's sentencing hearing on May 24, 2023, the Court accepted the Defendant's Rule 11(c)(1)(C) plea agreement and sentenced him to a term of 120 months' imprisonment on Count I and 60 months' imprisonment on Count III, to be served consecutively. Filing 129 (Text Minute Entry); Filing 130 at 2. In so doing, the Court sentenced the Defendant to the mandatory minimum sentences required by statute. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 924(c)(1)(A); *see also* Filing 132 at 21 (¶114). The Court also imposed a five-year term of supervised release with respect to Count I and a two-year term of supervised release with respect to Count III, to run concurrently. Filing 130 at 3. The Court entered its Judgment the following day on May 25, 2023. Filing 130 at 1. Consistent with the appeal-waiver provision of his plea agreement, Sherman did not file a direct appeal with the United States Court of Appeals for the Eighth Circuit. *See* Filing 106 at 5–6.

Sherman then timely filed the present § 2255 Motion, which was received by this Court on June 3, 2024. *See* Filing 138.[1] Sherman asserts only one ground for relief in this Motion, claiming that he received ineffective assistance of counsel. Filing 138 at 4. Specifically, Sherman alleges:

> Defense Counsel advised Mr. Sherman that he was unequivocally guilty of possessing a weapon in furtherance of a drug trafficking offense and that no avenue of defense existed against the charge lodged against him. If Mr. Sherman knew that a jury could possibly find him not guilty when the firearm in question was an unloaded long-barrelled [sic] shotgun that was stored in an extremely difficult-to-access location and whose presence could be proven to be incidental and unrelated to the drug conspiracy, he would not have pled guilty and would have insisted on going to trial.

Filing 138 at 4.[2]

Based upon this one claim, Sherman asks that the Court vacate his guilty plea, conviction, and sentence, and remand his case for further proceedings. Filing 138 at 12.

## II. ANALYSIS

### A. Standards Applicable to 28 U.S.C. § 2255

Sherman brings his Motion pursuant to 28 U.S.C. § 2255, which permits federal prisoners to ask the sentencing court to "vacate, set aside, or correct" a sentence upon a showing that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). "Section 2255 is an outgrowth of the historic habeas corpus powers of the federal courts as applied to the special case of federal prisoners." *Jones v. Hendrix*, 143 S. Ct. 1857, 1865 (2023); *see also*

---

[1] Sherman had 14 days in which to file his appeal after this Court entered its judgment. Fed. R. App. P. 4(b)(1)(A). Thus, his one-year deadline for filing a § 2255 Motion pursuant to 28 U.S.C. § 2255(f)(1) did not begin to run until June 8, 2023. *See Anjulo-Lopez v. United States*, 541 F.3d 814, 816 n.2 (8th Cir. 2008) (citing *Never Misses A Shot v. United States*, 413 F.3d 781, 782 (8th Cir. 2005)).

[2] At no point does Sherman claim that he received ineffective assistance of counsel in relation to his plea of guilty to the drug offense charged in Count I. His § 2255 Motion only alleges ineffective assistance of counsel with respect to the firearm offense charged in Count III.

*Odie v. United States*, 42 F.4th 940, 944 (8th Cir. 2022) ("Section 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." (internal quotation marks omitted) (quoting *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011))). Relief under § 2255 is limited, as it "does not encompass all claimed errors in conviction and sentencing." *Meirovitz v. United States*, 688 F.3d 369, 370 (8th Cir. 2012) (quoting *Sun Bear*, 644 F.3d at 704).

The judge receiving a § 2255 motion to vacate must first determine if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." *See* Rule 4(b) of the Rules Governing Section 2255 Proceedings. "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the Court must order the United States to respond and consider holding a hearing. 28 U.S.C. § 2255(b); *see also* Rules 4(b) and 8(a) of the Rules Governing Section 2255 Proceedings. A court cannot accept a petitioner's allegations as true if "they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Walker v. United States*, 810 F.3d 568, 580 (8th Cir. 2016).

### B. Discussion

Based upon the Court's review of Sherman's Motion and the record, it plainly appears that he is not entitled to relief on his ineffective assistance of counsel claim. Under the Supreme Court's test for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668, 686 (1984), courts consider "whether counsel's performance was deficient, and if so, whether prejudice resulted." *United States v. Harris*, 83 F.4th 1093, 1097 (8th Cir. 2023) (internal quotations and citation omitted). "Failure to establish either *Strickland* prong is fatal to an ineffective-assistance claim." *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011). "Therefore, we need not inquire into the effectiveness of counsel . . . if we determine that no prejudice resulted from counsel's

alleged deficiencies." *Ramirez v. United States*, 751 F.3d 604, 607 (8th Cir. 2014) (cleaned up). To meet the second prong of the *Strickland* test, petitioners normally need to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Paulson v. Newton Corr. Facility, Warden*, 773 F.3d 901, 904 (8th Cir. 2014) (internal quotation marks and citation omitted). In cases like this where a defendant alleges that deficient representation caused him to plead guilty, the Supreme Court has explained that the defendant must establish a "reasonable probability that he would not have entered his plea but for his counsel's deficiency[.]" *Premo v. Moore*, 562 U.S. 115, 130 (2011) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

    1. *Defense Counsel Did Not Provide Constitutionally Deficient Performance*

With respect to the first prong of the inquiry, Sherman claims that his counsel provided deficient representation when she advised him "that he was unequivocally guilty of possessing a weapon in the furtherance of a drug trafficking offense and that no avenue of defense existed against the charge lodged against him." Filing 138 at 4. In Sherman's view, this amounted to deficient representation because if he knew that a jury "could possibly" acquit him of this charge given the location and accessibility of the firearm, "he would not have pled guilty and would have instead insisted on going to trial." Filing 138 at 4. Based upon the Court's review of the record, it plainly appears that Sherman has failed to meet his burden of showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to him] by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal quotations and citation omitted). This is because the advice Sherman claims to have received does not fall below the standard of reasonable competence that is required. *See Moore*, 562 U.S. at 126 ("Whether before,

during, or after trial, when the Sixth Amendment applies, the formulation of the standard is the same: reasonable competence in representing the accused").

First, Sherman's claim he did not know "that a jury could possibly find him not guilty[,]" Filing 138 at 4, is belied by the record. Prior to his change of plea hearing, Sherman completed a Petition to Enter a Plea of Guilty wherein he acknowledged that if he were to plead not guilty, he would maintain his "right to be presumed innocent until and unless the United States has proven [him] guilty of the offense beyond a reasonable doubt by the unanimous agreement of all 12 jurors." Filing 105 at 2–3. At his change of plea hearing, a United States Magistrate Judge reiterated to Sherman that if there was a trial, the Government would be required to prove to a jury each element of the charged offenses. Filing 116 at 7. When asked whether he had "any questions about the nature of the charges filed against [him] or what the government would have to prove in order to convict [him] of each of these charges[,]" Sherman responded, "No." Filing 116 at 10. Accordingly, to the extent Sherman claims that he did not know a jury "could possibly find him not guilty" his claim is both incredible and patently contradicted by the record. Sherman was made full-aware of his jury trial right, his right to be presumed innocent, and the Government's obligation to prove each element of the offense charged in Count III beyond a reasonable doubt. Second, to the extent Sherman takes issue with his counsel's opinion that "no avenue of defense existed against the charge lodged against him[,]" and that he was "unequivocally guilty" of the offense, the Court notes that during the change of plea hearing, the Magistrate Judge specifically asked whether Sherman had "discussed the facts of this case and the evidence the government has against [him]" with his attorney. Filing 116 at 10. Sherman responded, "Yes." Filing 116 at 10. The Magistrate Judge also asked Sherman whether he had discussed with his attorney "any and all defenses that you think you think you may have[,]" whether he was "fully satisfied with the

6

representation that [his attorney] has provided to [him]," and whether he was fully satisfied with "the advice that she's given to you in this case[.]" Filing 116 at 10–11. Sherman responded "Yes" to each of these questions. Filing 116 at 10–11.

The Supreme Court has explained that "[i]n applying and defining the *Strickland* standard—reasonable competence in representing the accused—substantial deference must be accorded to counsel's judgment." *Moore*, 562 U.S. at 131. In light of the record, counsel's professional opinion that there was no viable means of defending against Count III was objectively reasonable. *See United States v. Frausto*, 754 F.3d 640, 642 (8th Cir. 2014) (discussing the "objective reasonableness" standard and noting there is a "strong presumption" counsel's conduct falls withing the wide range of reasonable professional assistance); *Bahtuoh v. Smith*, 855 F.3d 868, 872 (8th Cir. 2017) ("Establishing objective unreasonableness is particularly difficult with ineffective assistance of counsel claims"). Sherman admitted under oath that if the case proceeded to trial, the Government would be able to prove all of the facts he stipulated to in his plea agreement. Filing 116 at 25. This necessarily included the fact that when Sherman and his compatriots were pulled over on August 20, 2021, law enforcement found both methamphetamine, scales, baggies, and a Mossberg 500, .12-guage shotgun in the vehicle. Filing 106 at 2–3. Further review of the record reveals that on the day Sherman was apprehended, he admitted to law enforcement officers that the Mossberg shotgun in the vehicle was his. Filing 132 at 9. "The Supreme Court has held that "the 'generally accepted contemporary meaning' of the word 'carry' includes the carrying of a firearm in a vehicle.'" *United States v. Wright*, 993 F.3d 1054, 1064 (8th Cir. 2021) (quoting *Muscarello v. United States*, 524 U.S. 125, 139 (1998)). The Eighth Circuit has further explained that "when a motor vehicle is used, carrying a weapon takes on a less restrictive meaning than carrying on the person. The means of carrying is the vehicle." *United*

*States v. Nelson*, 109 F.3d 1323, 1326 (8th Cir. 1997) (internal quotations and citation omitted). Thus, trial defense counsel's assessment of the case was far from objectively unreasonable—it was directly on point.

While the inherent nature of jury trials means there is always a "possibility" an acquittal might be returned no matter the state of the evidence, trial defense counsel hardly renders constitutionally deficient performance by advising her client that she cannot envision a viable "avenue of defense" based upon the facts of a given case. *See United States v. Horsman*, 114 F.3d 822, 829 (8th Cir. 1997) (explaining that "[w]hile jurors possess the raw power to set an accused free for any reason or for no reason, their duty is to apply the law as given to them by the court") (internal quotations and citation omitted); *Richter*, 562 U.S. at 110 ("Just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities"). For these reasons, the record conclusively demonstrates that Sherman was made aware of his right to be presumed innocent and his right to have the Government prove his guilt beyond a reasonable doubt at a jury trial. The advice he now complains he received does not rise to the level of deficient performance under the first prong of the *Strickland* test for ineffective assistance of counsel.

> 2. *Sherman Fails to Demonstrate a Reasonable Probability that he Would Have Insisted on Going to Trial*

The second prong of the inquiry—which looks to whether a defendant was prejudiced by his counsel's performance—serves as a separate and independent basis to deny Sherman's claim. *Worthington*, 631 F.3d at 498. In cases "where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have

succeeded at trial." Hill, 474 U.S. at 59. While not necessarily an "affirmative" defense as that term is understood within this context, Sherman suggests that the location and accessibility of the firearm in this case provided a basis upon which he could have mounted a defense at trial that "could possibly" have resulted in a not guilty verdict. Filing 138 at 4.[3] No matter how one characterizes such a defense, it would almost assuredly have failed at trial.

Given the very strong evidence against Sherman that the Court described above, it plainly appears that any defense along the lines Sherman alludes to in his Motion would have almost certainly failed at trial. Yet, despite this overwhelming evidence of guilt, Sherman's counsel was still able to secure a favorable plea agreement in this case which guaranteed the lowest possible term of imprisonment allowed for by statute on the two counts to which he pleaded guilty and ensured dismissal of three others. Sherman cannot meet his burden of demonstrating that such a defense "likely would have succeeded at trial" and he, therefore, has not established prejudice under the second prong of the *Strickland* test. Hill, 474 U.S. at 59. Sherman's speculative hope that a jury could "possibly" have acquitted him under these circumstances is little more than wishful thinking and insufficient to show there is a reasonable probability he would not have pleaded not guilty, even if the Court were to assume solely for the sake of argument that his counsel provided deficient performance. *See* United States v. Frausto, 754 F.3d 640, 644 (8th Cir. 2014) (concluding that the district court did not abuse its discretion by denying a § 2255 motion without an evidentiary hearing where that a defendant's "bare assertion that he would not have pled guilty is insufficient to allow for an intelligent assessment of the likelihood that [the defendant] would

---

[3] Generally speaking, "[a]n 'affirmative defense' introduces an additional element into the case which must be proved by the defendant . . . ." *Eighth Circuit Manual of Model Jury Instructions (Criminal)* 9.00 (2023). The theory of defense Sherman alludes to in his Motion instead takes aim at an element of the Government's *prima facie* case—namely, that he used or carried a firearm during and in relation to a drug trafficking crime. *See Eighth Circuit Manual of Model Jury Instructions (Criminal)* 6.18.924C-2 (2023).

9

not have pled guilty and is far too speculative to warrant § 2255 relief"). Because collective consideration of Sherman's Motion and the record conclusively show that he cannot meet his burden of establishing prejudice under the second prong of *Strickland*, his ineffective assistance of counsel claim fails.

### C. Certificate of Appealability

No appeal may be taken on a § 2255 motion to vacate unless a judge issues a certificate of appealability, which requires the appellant to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(1)–(2). To make "a substantial showing of the denial of a constitutional right" after the district court denies a constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a petition is denied on procedural grounds, a petitioner is entitled to a certificate of appealability if the petitioner "shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. Reasonable jurists would not find the Court's decisions debatable. Therefore, the Court will not issue a certificate of appealability.

### III. CONCLUSION

A defendant's "plea of guilty is a solemn act not to be disregarded because of belated misgivings about its wisdom." *United States v. Flynn*, 969 F.3d 873, 877 (8th Cir. 2020) (internal quotation and citation omitted). For the reasons explained above, it plainly appears that Sherman's ineffective assistance of counsel claim is without merit. The matters he raises in his Motion and

the record conclusively show that Sherman is entitled to no relief, and reasonable jurists would not find the Court's decisions debatable. Accordingly,

IT IS ORDERED:

1. Sherman's Motion to Vacate Under 28 U.S.C. § 2255, Filing 138, is denied; and

2. The Court will not issue a certificate of appealability.

Dated this 13th day of June, 2024.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge

11